IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLYDE GRAY,

        Plaintiff,

  v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security

        Defendant.

No. C 12-4014 MMC

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

     Before the Court is plaintiff Clyde Gray's ("Gray") "Motion [for] Summary Judgment," filed February 21, 2013, by which he seeks judicial review of a decision issued July 22, 2011, by an administrative law judge ("ALJ"), denying his claim for social security disability benefits. Also before the Court is defendant Acting Commissioner Carolyn W. Colvin's ("the Commissioner") "Cross Motion for Summary Judgment," filed March 21, 2013. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having read and considered the parties' respective written submissions, the Court rules as follows.

**BACKGROUND**

     On October 2, 2009, Gray, who was then 47 years old, submitted an application for social security benefits, alleging he "became unable to work because of [a] disabling condition on February 28, 2007." (See Administrative Transcript ("Tr.") 148.) On February 11, 2010, the Social Security Administration denied the application (see Tr. 69-73), and, on

1  July 16, 2010, denied Gray's request for reconsideration (see Tr. 75-79).  Gray next
2  requested a hearing before an ALJ.  (See Tr. 80.)  On June 15, 2011, the ALJ conducted a
3  hearing, at which time Gray, who was represented by counsel, testified, as did a vocational
4  expert.  (See Tr. 25.)

    On July 11, 2011, the ALJ issued a Decision, analyzing Gray's application under the five-step sequential evaluation process set forth in the Code of Federal Regulations.  (See Tr. 8-18.)[1]  At step one, the ALJ determined Gray has not engaged in substantial gainful activity since his alleged onset date.  (See Tr. 10.)  At step two, the ALJ found Gray has the following "severe impairments":  "bilateral neural foraminal stenosis at L4-S1 with bilateral L-4 radiculopathy; bilateral shoulder pain; chronic low back pain; and depression."  (See Tr 10-11 (internal citations to evidence omitted).)  At step 3, the ALJ determined Gray does not have an impairment or combination of impairments that meets or equals a listed impairment.  (See Tr. 11-12.)

    Before continuing to step 4, the ALJ determined Gray's "residual functional capacity," and, in that regard, found Gray can "perform light work as defined in 20 CFR 404.1567(b) except that [Gray] cannot lift and/or carry more than 25 pounds";[2] "can sit 4 hours in an 8-

---

[1] "The Commissioner follows a five-step sequential evaluation process in assessing whether a claimant is disabled.
    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
    Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled."
McCartey v. Massanari, 298 F.3d 1072, 1074 n.6 (9th Cir. 2002).

[2] "Light work" is defined as work that involves, inter alia, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  See 20 C.F.R. § 404.1567(b). The above exception thus indicates that if a position for which Gray is otherwise qualified meets the "light work" definition but entails a slightly higher level of physical exertion with respect to lifting/carrying, Gray would be eligible for such work as well.

2

hour workday and can stand and/or walk 4 hours during an 8-hour work day"; "cannot perform repetitive bending or stooping"; "can perform simple tasks consistent with SVP 2 entry level work"; and needs a "sit/stand option" (see Tr. 12).  In so determining, the ALJ relied on the opinions of a number of medical practitioners.

With respect to physical limitations, the ALJ primarily relied on the opinions by two of Gray's treating medical practitioners, Raymond Y. Chan, D.C. ("Dr. Chan"), a chiropractor, and Babak J. Jamasbi, M.D. ("Dr. Jamasbi"), a physician specializing in pain management. (See Tr. 15.) In a report dated January 31, 2009, Dr. Chan found Gray is limited to lifting "no more than 25 pounds" and is "precluded from repetitive bending and stooping" (see Tr. 264-65), and in a report dated February 3, 2010, further opined that he "can do work in the standing or walking position 50% of the time, and in the sitting position for 50% of the time" (see Tr. 423).  Thereafter, Dr. Jamasbi, in a report dated June 16, 2010, found Gray's medical condition to be "permanent and stationary" (see Tr. 443, 507),[3] and adopted the limitations set forth in Dr. Chan's January 31, 2009 report (see id.); subsequently, in a report written June 9, 2011, Dr. Jamasbi again described Gray's condition as "permanent and stationary" (see Tr. 517), which the ALJ interpreted to mean the limitations identified in Dr. Jamasbi's June 16, 2010, report remained in effect without change (see Tr. 14). Additionally, the ALJ relied on a July 16, 2010 report by consulting physician M. Bayar, M.D., who, having reviewed Gray's medical records, concluded Gray could perform "light" work (see Tr. at 493-95), as well as the opinions of examining physician Calvin Pon, M.D., an orthopedist, and consulting physician, P. Harar, M.D., each of whom, on December 21, 2009, and January 7, 2010, respectively, opined that Gray could occasionally lift twenty pounds and frequently lift ten pounds (see Tr. 384, 396).  The ALJ considered, but did not accept, the opinion proffered by Sonia Bell, M.D. ("Dr. Bell"), a physician who practiced with

---

[3]The term "permanent and stationary" is used in connection with worker's compensation proceedings.  See Edgar v. Workers' Compensation Appeals Board, 65 Cal. App. 4th 1, 10 (1998).  Specifically, a disability is considered "permanent after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time."  See id.  The term, however, "does not mean total inability to work."  See id.

Dr. Jamasbi and who, in a form questionnaire dated June 9, 2011, opined that Gray can only lift less than ten pounds, and can only sit for two hours and stand/walk for two hours in an eight day. (See Tr. 594-95.)

With respect to mental limitations, the ALJ primarily relied on the opinion of Ute Kollath, Ph.D. ("Dr. Kollath"), a clinical psychologist, who, after examining Gray on December 7, 2009, found Gray to be "unimpaired" in seven out of nine "work-related abilities," specifically, the ability to: "follow simple instructions," "maintain adequate pace or persistence to perform [ ] one or two step simple repetitive tasks," "maintain adequate attention/concentration," "adapt to changes in job routine," "withstand the stress of a routine workday," "interact appropriately with co-workers, supervisors, and the public on a regular basis," and "adapt to changes, hazards, or stressors in the workplace setting"; as to the remaining two, Dr. Kollath found Gray "mildly impaired" in his ability to "follow complex/detailed instructions" and to "maintain adequate pace or persistence to perform [ ] complex tasks." (See Tr. 380-81.) Additionally, the ALJ relied on the opinion of consulting psychologist, A. Franco, Psy.D., who, after reviewing Gray's medical records, opined in a report dated January 22, 2010, that Gray can perform "simple one to two step work," can "sustain c/p/p [concentration/pace/persistence] for up to 8 hrs.," can "complete [a] normal day/week," and can "engag[e] in appropriate social interactions." (See Tr. 419.)

Proceeding to step 4, the ALJ found Gray cannot perform his "past relevant work" as an "auto detailer," because the job entails "medium" work. (See Tr. 17.)[4] Lastly, at step 5, the ALJ, relying on testimony provided by the vocational expert, found that in light of Gray's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Gray] can perform" (see Tr. 17), specifically, "parking lot attendant," "hand packager," "film developer," "security monitor,"

//

---

[4]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." See 20 C.F.R. § 404.1567(c).

4

and "order clerk" (see Tr. 17-18).[5]  Accordingly, the ALJ denied Gray's application at the fifth sequential step.

Gray next requested the Appeals Council review the ALJ's decision (see Tr. 4), which request the Appeals Council denied on June 27, 2012 (see Tr. 1).  Gray thereafter filed in district court the instant action for judicial review.

## DISCUSSION

A "decision to deny benefits will be disturbed only if it is not supported by substantial evidence or it is based on legal error."  See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation and citation omitted).  In determining whether a decision to deny benefits should be disturbed, however, a district court "may not try the case de novo." See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  Rather, the plaintiff, as the party seeking review of the ALJ's decision, has the "burden of proof" to demonstrate he is entitled to relief.  See Magallanes, 881 F.2d at 750.  In other words, the plaintiff bears the burden of demonstrating the ALJ erred in some manner and that, as a result of such error, the plaintiff either is entitled to benefits or to a new hearing before the ALJ.  In that regard, and of particular importance, the plaintiff must identify the errors he contends were made by the ALJ, see, e.g., Smith v. Chater, 951 F. Supp. 177, 181-82 (D. Co. 1997) (holding plaintiff seeking social security benefits not entitled to relief, where plaintiff argued "grounds of error" existed but "[did] not identify the claimed error"), and also specify where those errors exist in the record, see, e.g., Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) (holding district court, in evaluating motions for summary judgment, not required to "examine the entire file for evidence" to determine if plaintiff's claims have merit).

In his motion, Gray argues the Court should "remand the case to the SSA so it can remedy the defects by the ALJ."  (See Pl.'s Mot., third unnumbered page.)  Gray fails,

---

[5]At the hearing, Gray responded that the positions identified by the vocational expert are "dead end jobs."  (See Tr. 61.)  As the ALJ pointed out, however, such considerations are not relevant to the instant inquiry.  (See Tr. 62.)

5

however, to identify in any meaningful respect a defect or defects, let alone specify where in the record any such defect exists. Rather, Gray refers, without discussion, to certain medical evidence submitted to the ALJ, specifically, a "doctor statement saying that [he is] permanent and stationary with permanent disability" and "MRI, EMG, X Rays-films" (see id., fourth unnumbered page), and repeats, in essence, the testimony he offered at the administrative hearing, specifically, that he cannot work as a result of his impairments. As noted above, however, the Court does not conduct a de novo review of the administrative record, see Sorenson, 514 F.2d at 1119 n.10, but, rather, determines whether the claimant has shown the ALJ's decision is not based on substantial evidence and/or is based on legal error, see Magallanes, 881 F.2d at 750. Consequently, given Gray's failure to identify any specific deficiency or error, Gray has failed to show he is entitled to relief.

Further, to the extent Gray, by referring to radiographic and related findings, and his having been found "permanent and stationary," may be suggesting the ALJ's conclusions as to his residual functional capacity are not supported by substantial evidence, the Court disagrees; as set forth above, the ALJ, in determining Gray's physical limitations, relied on the opinions of two treating medical practitioners, specifically, Dr. Chan and Dr. Jamasbi, as well as the opinions of other medical practitioners.

To the extent Gray may be relying on the ALJ's rejection of Dr. Bell's opinion, such reliance likewise is unavailing, as the ALJ identified specific and legitimate reasons for doing so; in particular, as the ALJ noted, Dr. Bell's opinion was inconsistent with Dr. Jamasbi's treatment records.[6] (See Tr. 14-15); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding opinion of physician contradicted by other physicians may be rejected if ALJ "provid[es] specific and legitimate reasons that are supported by substantial evidence"; further holding ALJ may reject opinion that is "inadequately supported by clinical findings"). Additionally, as discussed above, Dr. Bell's opinion is inconsistent with the findings and conclusions of all of the other medical practitioners who offered opinions in

---

[6]As noted, Dr. Bell practiced with Dr. Jamasbi. At the time Dr. Bell offered her opinion, Dr. Jamasbi was Gray's "primary" physician. (See Tr. 515.)

1 this matter.

2       Finally, to the extent Gray may be relying on the ALJ's decision not to fully credit
3 Gray's own characterization of the extent of his impairments, such reliance is, again,
4 unavailing, as the ALJ identified clear and convincing reasons for such finding. See Burch
5 v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (affirming ALJ's "credibility findings,"
6 where ALJ identified "clear and convincing" reasons for "rejecting pain testimony"). In that
7 regard, the ALJ identified inconsistencies between Gray's claims and his testimony;
8 specifically, Gray, in his claim for benefits, asserted he could not work as of February 2007
9 due to his medical condition, but testified he continued to work as an auto detailer until
10 September 18, 2008, and that he left his employment because of a dispute over a demotion
11 rather than due to an inability to work (see Tr. 13).[7] As the ALJ further noted, Gray, contrary
12 to his self-described condition of essentially total physical incapacitation (see Tr. 46),
13 engaged in such daily activities as helping his children get ready for school,[8] as well as
14 helping them with homework and playing board games with them, attending church weekly,
15 and shopping for food and clothes twice a month (see Tr. 13). Additionally, the ALJ
16 considered the level of treatment Gray received, which was conservative with no surgical
17 intervention recommended, and that his personal physician Dr. Jamasbi, who began
18 treating him in 2009 and was continuing to treat him at the time of the hearing before the
19 ALJ, opined, as discussed above, that his impairments did not preclude him from working.
20 See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (affirming ALJ's credibility
21 findings, where ALJ identified "several contradictions between claimant's testimony and the
22 relevant medical evidence and cited several instances of contradictions within the claimant's

---

[7] Gray testified at the hearing that his employer rescheduled him to a "night shift," and, when he told his employer he could not work in the evening due to familial obligations and a lack of public transportation at that hour, he was then offered a "demot[ion] to a lot porter." (See Tr. 39.) When Gray told his employer he would not accept the position as a lot porter, he was terminated on September 18, 2008. (See id.)

[8] Gray also testified he picked his children up from school each day, which, for more than a year of his claimed period of disability, entailed a "commute from Oakland to Fremont." (See Tr. 39.)

7

own testimony"); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (affirming ALJ's credibility findings, where claimant's testimony of disabling pain was inconsistent with limitations set by claimant's treating physician).

Accordingly, Gray's motion for summary judgment will be denied, and the Commissioner's cross-motion will be granted.

## CONCLUSION

For the reasons stated above, Gray's motion for summary judgment is hereby DENIED, and the Commissioner's cross-motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: September 19, 2013

MAXINE M. CHESNEY
United States District Judge